UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Charles Ellis,
        Petitioner

        v.                                    Case No. 09-cv-276-SM
                                              Opinion No. 2011 DNH 168
Warden, Northern New Hampshire
Correctional Facility,
        Respondent

**O R D E R**

In 2007, a state petit jury convicted Charles Ellis of negligent homicide and possession of a controlled substance (heroin). He was sentenced to serve a term of six to twelve years in prison, as well as a suspended term of one and one-half to three and one-half years. His convictions were affirmed on appeal to the New Hampshire Supreme Court. State v. Ellis, Case No. 2008-0072, slip op. (N.H. Feb. 4, 2009) (document no. 17-1).

Ellis now seeks federal habeas corpus relief, asserting that, during the course of his trial, several of his federally protected constitutional rights were violated. See generally 28 U.S.C. § 2254. The State moves for summary judgment. Ellis has not objected. For the reasons discussed below, the State's motion is granted.

**Standard of Review**

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited. A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). And, a habeas petitioner seeking relief under that provision faces a substantial burden insofar as "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

Alternatively, habeas relief may be granted if the state court's resolution of the constitutional issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has
> on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies
> the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies
> that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> [T]he most important point is that an <u>unreasonable</u>
> application of federal law is different from an
> <u>incorrect</u> application of federal law . . . . Under §
> 2254(d)(1)'s "unreasonable application" clause, then, a
> federal habeas court may not issue the writ simply
> because that court concludes in its independent
> judgment that the relevant state-court decision applied
> clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be
> unreasonable.

Id. at 410-11 (emphasis in original).  So, to prevail, the habeas petitioner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

3

Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is "contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).  In fact, even when a state court has summarily rejected a petitioner's federal claim without any discussion at all, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington, 131 S. Ct. at 784-85 (emphasis supplied).  Under those circumstances - that is, when "a state court's decision is unaccompanied by an explanation," - the habeas petitioner still bears the burden of "showing there was no reasonable basis for the state court to deny relief."  Id. at 784.

Only as to federal claims that were not adjudicated on the merits by the state court (or that were not dismissed by operation of a regularly-applied state procedural rule), may this court apply the more petitioner-friendly de novo standard of

review. See, e.g., Clements v. Clarke, 592 F.3d 45 52 (1st Cir. 2010) ("In contrast, a state court decision that does not address the federal claim on the merits falls beyond the ambit of AEDPA. When presented with such unadjudicated claims, the habeas court reviews them de novo.") (citation omitted).

With those principles in mind, the court turns to Ellis's petition and the State's motion for summary judgment.

## Discussion

On June 29, 2006, Ellis caused a motor vehicle accident on Interstate Route 93, in Londonderry, New Hampshire. A New Hampshire State Police Trooper responded to the accident, administered a field sobriety test, and arrested Ellis for driving while intoxicated. A week later, the driver of the other vehicle involved in the accident died. Ellis was charged with several crimes, including possession of a controlled drug (heroin), negligent homicide, reckless conduct, and driving while intoxicated. He was convicted on all counts, at which point the State nolle processed one of the lesser charges, and the trial court dismissed the aggravated driving while intoxicated, reckless conduct, and lesser (Class B) negligent homicide charges. On the two remaining counts of conviction - negligent homicide and possession of a controlled substance - the court

sentenced Ellis to serve six to twelve years of imprisonment, and a suspended term of one and one-half to three and one-half years. As noted above, Ellis's convictions were affirmed on appeal to the New Hampshire Supreme Court.

After carefully reviewing Ellis's petition for habeas corpus relief, the magistrate judge concluded that it advances four arguments:

1. The trial judge erred in admitting evidence of Ellis's prior drug use through the testimony of a police officer, without notice, thereby rendering his trial fundamentally unfair in violation of his right to due process under the Fourteenth Amendment.

2. The admission of a forensic medical report violated the Confrontation Clause of the Sixth Amendment and Ellis's right to due process under the Fourteenth Amendment.

3. The indictments did not articulate how Ellis's driving caused the victim's death, in violation of Ellis's right to Due Process under the Fourteenth Amendment.

4. The evidence on the elements of impairment and negligence was insufficient to support Ellis's conviction, in violation of his right to Due Process under the Fourteenth Amendment.

Order dated May 17, 2001 (document no. 18) at 1-2.

I.   Procedurally Defaulted Claims.

The procedural default doctrine is a "corollary to the habeas statute's exhaustion requirement," Dretke v. Haley, 541 U.S. 386, 392 (2004), and is based on the principle that, before a federal court intervenes, the state's highest court should be given an opportunity to address a petitioner's federal constitutional claims.  See, e.g., Coleman v. Thompson, 501 U.S. 722, 732 (1991) ("a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.").  Consequently, the Supreme Court has held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.

Here, two of Ellis's claims were procedurally defaulted and, therefore, the state supreme court did not address them on the merits.  See State v. Ellis, slip op. at 1 ("A review of the trial transcript, however, indicates that [Ellis] did not raise a

lack of notice issue before the trial court; it has therefore not been preserved for our review."); Id. at 3 ("The record before us provides no evidence that the trial court was even given an opportunity to consider either of the sufficiency of the evidence issues raised by the defendant on appeal.  For the foregoing reasons, they have not been preserved for our review.").  See also Obershaw v. Lanman, 453 F.3d 56, 67-68 (1st Cir. 2006) (discussing procedural default in a similar context to that presented here - that is, when "the state court finds forfeiture because of the defendant's failure to object at trial").

Plainly, then, claims one and four in Ellis's petition have been procedurally defaulted.  And, because he has failed to object to the State's motion for summary judgment, Ellis has not demonstrated "cause for the default and actual prejudice as a result of the alleged violation of federal law, [nor has he shown] that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.

II.  Claims Addressed on the Merits.

The state supreme court resolved Ellis's two remaining claims - that the indictments were deficient and that his rights under the Confrontation Clause were violated - on the merits.

Those decisions are, then, subject to deferential review. See 28 U.S.C. § 2254(d)(1).

    A.   Sufficiency of the Indictments.

Ellis claims that the indictments did not sufficiently describe how his erratic driving actually caused the victim's death, thereby denying him his constitutionally protected right to due process.  Under New Hampshire's criminal law:

> A person is guilty of a class A felony when in consequence of being under the influence of an intoxicating liquor or a controlled drug or any combination of intoxicating liquor and controlled drug while operating a propelled vehicle, . . . . he or she causes the death of another.

N.H. Rev. Stat. Ann. 630:3 II.  And, according to Ellis's brief to the New Hampshire Supreme Court, the indictment at issue here provided as follows:

> . . . while in consequence of being under the influence of a controlled drug, specifically, Methadone, [Ellis] drove a propelled vehicle . . . on [I]nterstate 93, thereby causing the death of Edward Ellison.

Appellant's Brief to the New Hampshire Supreme Court (document no. 17-2) at 17.[1]  Ellis argued that:

---

[1] Neither Ellis nor the State provided the court with copies of the original indictments.  Accordingly, the court will accept as accurate the abridged version set forth in Ellis's brief on direct appeal, which is quoted above.

> Although the indictments [in this case] do allege the statutory elements of the offense of negligent homicide[,] they fail to allege sufficient facts to allege a crime. . . . [F]or the offense of negligent homicide [] it is necessary to allege an act of causation in order to allege how the offense was committed.

Id. at 17-18.  In other words, Ellis argued that the negligent homicide indictments were constitutionally deficient because they failed "to allege any nexus between the act of driving under the influence and causing the death of Edward Ellison."  Id. at 18.

Under governing Supreme Court precedent, an indictment is sufficient for Federal Constitutional purposes if it:

> first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.  It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished. Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.

Hamling v. United States, 418 U.S. 87, 117-18 (1974) (citations and internal punctuation omitted).  In rejecting Ellis's claim, the New Hampshire Supreme Court reasoned as follows:

> The defendant also argues that the trial court erred in failing to dismiss the negligent homicide indictments because they did not articulate how he caused the victim's death. He does not argue that the indictments failed to include the elements of the charged offense but rather that they failed to allege any nexus between the acts of driving and causing the death of the victim.
>
> The purpose of an indictment is to advise the defendant of the charges he must be prepared to address at trial and to prevent him from being twice placed in jeopardy for the same offense. State v. Hilton, 144 N.H. 470, 475 (1999). "[O]nce a specific offense has been identified, there is no further and independent requirement to identify the acts by which a defendant may have committed that offense." State v. Pelky, 131 N.H. 715, 719 (1989) (quotations omitted). The defendant does not argue that he did not know the facts giving rise to the indictment nor that any alleged insufficiencies affected his ability to prepare his defense. Nor does he argue that his protection against double jeopardy has been impaired. In the absence of these factors, he has failed to establish any prejudice.

State v. Ellis, slip op. at 2.

Ellis has not demonstrated that the state court's resolution of his constitutional claim was either contrary to, or involved an unreasonable application of, clearly established federal law. While the court's reference to Ellis having "failed to establish any prejudice" from the indictment's (alleged) lack of specificity is confusing, a fair reading of the opinion is that the court found the indictment to be legally sufficient as written - that is, the indictment alleged every essential element

of the offense as defined by statute, and it was sufficiently specific to enable Ellis to "plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling, 418 U.S. at 117. The indictment clearly informed Ellis of the facts and circumstances giving rise to the "specific offense, coming under the general description, with which he [was] charged," Hamling, 418 U.S. at 118, by identifying the time, the place (I-93), the controlled drug influencing his operation (Methadone), and the causal relationship between his operation of a propelled vehicle and the death of Edward Ellison. Ellis has not shown, nor can the court conclude, that the New Hampshire Supreme Court unreasonably applied, or reached a conclusion that was contrary to, Supreme Court precedent defining the constitutional adequacy of a criminal indictment.

    B.    Confrontation Clause.

At Ellis's trial, the State introduced two lab reports through a foundational witness from the New Hampshire State Laboratory. The first was the report generated by the State Laboratory itself, which showed that a sample of Ellis's blood collected shortly after the accident contained detectible levels of Methadone and cocaine metabolites (as well as detectible, but not reportable, levels of heroin metabolites). Ellis objected to the introduction of the State Laboratory's report, on grounds

that it was cumulative - presumably in light of the other evidence of record (including Ellis's own statements) indicating that he had taken heroin within 24 hours of the accident and may have taken Methadone very shortly before the accident. That objection was overruled.

The second report the State introduced - the report at issue here - was from National Medical Services (the "NMS Report"). At the time of the accident, the New Hampshire State Laboratory lacked the ability to test blood samples for the presence of Methadone. Accordingly, it sent a sample of Ellis's blood to NMS and asked it to test exclusively for the presence of that drug. NMS reported that the sample did, in fact, contain Methadone.[2] Ellis objected to the introduction of the NMS Report on two grounds: first, that the report was inadmissible hearsay; and, second, that its introduction would violate his rights under the Confrontation Clause, as described in Crawford v. Washington, 541 U.S. 36 (2004). Those objections were overruled and the report was admitted.

---

[2] Shortly thereafter (but before Ellis's trial), the State Lab acquired the ability to test blood samples for the presence of Methadone. Accordingly, it ran an additional test on Ellis's blood - hence, the existence of both the State Lab report and the NMS Report on Ellis's blood levels of Methadone.

On appeal, the New Hampshire Supreme Court held that even assuming Ellis had properly preserved his Confrontation Clause argument for appellate review, and even assuming that the admission of the challenged NMS report actually violated his constitutional rights, "any error in admitting the NMS report . . . was harmless." State v. Ellis, slip op. at 2. In reaching that conclusion, the court held that the State had demonstrated that the (assumed) error was harmless beyond a reasonable doubt. Id. (citing State v. Deschenes, 156 N.H. 71, 80 (2007)).

As the Supreme Court has recognized, some constitutional errors "are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Chapman v. California, 386 U.S. 18, 22 (1967). See also Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) ("[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one. In Chapman, this Court rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction. The Court reasoned that in the context of a particular case, certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial.") (citations omitted).

14

As noted above, the New Hampshire Supreme Court concluded that the NMS Report was cumulative and held that the State had demonstrated, beyond a reasonable doubt, that its admission did not prejudice Ellis.  That is entirely consistent with the "harmless error" test articulated by the Supreme Court.  See Chapman, 386 U.S. at 24.  And, nothing in Ellis's pleadings, the record, or in the state supreme court's opinion suggests that the state court resolved Ellis's constitutional claim in a manner that was "contrary to" or involved an "unreasonable application of" clearly established federal law, as determined by the Supreme Court.  Nor was the state court's harmlessness determination itself unreasonable.  See Mitchell v. Esparza, 540 U.S. 12, 18 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner.") (citations omitted).

Importantly, however, the Supreme Court has held that, in a § 2254 proceeding:

> a court must assess the prejudicial impact of
> constitutional error in a state-court criminal trial
> under the "substantial and injurious effect" standard
> set forth in Brecht [v. Abrahamson, 507 U.S. 619
> (1993)] whether or not the state appellate court
> recognized the error and reviewed it for harmlessness

>  under the "harmless beyond a reasonable doubt" standard
>  set forth in Chapman.

Fry v. Pliler, 551 U.S. 112, 121-22 (2007). Under Brecht, a federal court may not grant habeas relief unless it concludes that a constitutional error during the underlying criminal trial had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 619 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

So, rather than affording the state court's decision the deferential review required by § 2254 (and discussed in Esparza), it would seem that this court must make a de novo determination of whether the asserted constitutional error in Ellis's trial (admission of the "NMS Report") had a "substantial and injurious effect or influence in determining the jury's verdict." As the court of appeals has observed,

>  On collateral review of trial error, the test for
>  harmless error is whether the error had a substantial
>  and injurious effect or influence in determining the
>  jury's verdict. The burden of establishing
>  harmlessness rests with the state qua respondent. If
>  the habeas court entertains grave doubt as to
>  harmlessness, the petitioner must win.

Foxworth v. St. Amand, 570 F.3d 414, 436 (1st Cir. 2009) (citations and internal punctuation omitted). With regard to the phrase "grave doubt," the Supreme Court has stated that "we mean

16

that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.  We conclude that the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict (i.e., as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')."  O'Neal v. McAninch, 513 U.S. 432, 435 (1995).

    In this case, the NMS Report probably should have been excluded from Ellis's trial on Confrontation Clause grounds, but its introduction was certainly harmless.  That is to say, introduction of the NMS Report plainly did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 638.  The properly admitted and uncontradicted report from the New Hampshire State Laboratory, as well as the expert testimony from Dr. Wagner, established that Ellis's blood contained Methadone, cocaine metabolites, and heroin metabolites.  The jury also heard evidence that Ellis admitted to a State Trooper that he had taken heroin fewer than 24 hours before the accident.  And, Dr. Wagner opined that the results of the State Laboratory report regarding levels of Methadone in Ellis's blood were entirely consistent with his having ingested Methadone during a stop he made at a

rest area shortly before the accident (which stop was witnessed by another State Trooper).

As the New Hampshire Supreme Court properly concluded, the NMS report was entirely cumulative. Even if that report had been excluded, there was still more than sufficient uncontradicted evidence in the record (including the State Laboratory report, Ellis's own statements about his drug use, and a State Trooper's observations of him at the rest area very shortly before the accident) from which the jury could conclude, beyond a reasonable doubt, that he was under the influence of a controlled drug (i.e., Methadone) while operating a propelled vehicle and, as a result, caused the death of Edward Ellison - in other words, that he was guilty of the charge of negligent homicide.

Having reviewed the trial transcripts and the evidence presented against Ellis, the court does not have "grave doubt as to [the NMS report's] harmlessness." Foxworth, 570 F.3d at 436. Rather, the court concludes that introduction of the NMS report - if Constitutional error - was harmless insofar as it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 619.

**Conclusion**

For the foregoing reasons, the State's motion for summary judgment (document no. 23) is granted.  The petition for a writ of habeas corpus (document no. 1) is denied and the Clerk of Court shall close the case.

Because Ellis has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability.  Petitioner may, however, seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22(b).  See Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 12, 2011

cc:   Charles Ellis, pro se
      Elizabeth C. Woodcock, Esq.